UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MICHAEL MICHEL,

    Plaintiff,

v.   Cause No. 2:08 CV 331

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

    Defendant.

## OPINION AND ORDER

After Defendant, American Family Mutual Insurance Company ("American Family") offered to settle Plaintiff, Michael Michel's ("Michel") underinsured motorist claim for an amount well-below his policy limits, Michel filed this suit alleging bad faith, breach of the insurance contract and negligence. Presently, before the court is American Family's "Motion for Partial Summary Judgment" filed on March 17, 2010. Michel responded in opposition on April 6, 2010 to which American Family replied on April 19, 2010. Subsequently, on April 29, 2010, American Family filed a motion to exclude the expert report of Stacy Gleason. Briefing on that motion was completed on May 17, 2010. For the following reasons, American Family's Motion for Partial Summary Judgment will be GRANTED and the Motion to Exclude will be DENIED as MOOT.

## FACTUAL BACKGROUND

This cause of action originates from injuries sustained by Michel in an automobile accident on June 3, 2005, in which Michel's vehicle was side-swiped by a truck driven by Brian Hunter ("Hunter"). The dispute at hand arises out of Michel's automobile policy for UIM coverage with American Family. Michel alleges that his damages exceed the $100,000 policy limits which he

1

received from American Family on behalf of Hunter's policy. Thus, Michel contends his underinsured motorist policy with American Family should cover the damages he suffered in excess of $100,000. American Family in turn, disputes the value of Michel's damages. The relevant facts are as follows:

American Family insured both Michel and Hunter at the time of the collision. The insurance policy issued to Hunter by American Family carried $100,000 in bodily-injury liability limits; the policy issued to Michel by American Family carried under-insured motorist (UIM) coverage limits of $250,000 as well as medical payments coverage of $10,000. Both Michel and Hunter promptly reported the accident to their respective insurance agents and each claim was assigned to a different casualty claim examiner within American Family. Michel's claim was assigned to Nakia Tomlinson ("Tomlinson") and eventually landed in the hands of Susan D. White ("White"), Casualty Claims Senior Adjuster. Although American Family insured both individuals, separate claim files were kept for each individual insured.

Michel incurred substantial medical bills due to his injuries from the accident. American Family paid $10,000 of Michel's medical bills under the medical payments coverage of his policy while maintaining full subrogation rights. Michel eventually retained counsel and filed a state court personal injury lawsuit against Hunter for the injuries he received in the accident. American Family approved a settlement between Hunter and Michel for the full amount of Hunter's policy limits of $100,000. In addition, after discussion with Michel's counsel, American Family agreed to accept $6,000 in satisfaction of its subrogation lien. American Family was then informed that Michel intended to pursue an underinsured motorist claim (UIM).

To that end, Michel, through counsel, submitted a package of materials consisting of medical

bills, records, and a transcript from the deposition of Michel's treating physician to American Family so that American Family could begin processing his UIM claim. Michel did not make a settlement demand.

White, who had been assigned to Michel's UIM claim, reviewed these documents on September 19, 2008. White is an experienced claims and casualty adjuster and has 22 years of claims adjusting experience. The documents revealed that Michel was attributing his carpal tunnel syndrome, a torn rotator cuff, and soft-tissue neck, back, and right arm injuries to the accident. All told, these alleged accident related expenses totaled $25,629.38. Michel did not lose any wages or income as a result of the accident and were not included as part of the UIM claim.

White's review of the documents also revealed that Michel had a history of pre-accident complaints similar to those he attributed to the accident. White sent the records to American Family's medical services department to determine whether the medical expenses claimed by Michel were appropriate and whether his complaints were, in fact, accident related. Jamie J. Tebbe (Tebbe"), a licensed nurse employed by American Family, reviewed the records and issued a report to White on October 2, 2008.

In her report, Tebbe observed that Michel had been in a vehicular accident in 1994 and after that accident, he complained of neck pain, low-back pain, weakness in his legs and arms, numbness in his upper and lower extremities, numbness in his hands and fingers and shoulder pain. These complaints prevented Michel from working full time for several months after that 1994 accident and he was referred to a pain clinic for treatment. Michel received regular treatment from his personal physician both before and after the accident with Hunter and he was prescribed a number of pain

medications both before and after the current accident.[1]

With respect to the present action, Tebbe wrote:

Damages to the SUV [were at] the driver's corner, and totaled $1,146.00, the vehicle was drivable. The patient was not immediately taken to the ER. An acute tear of the rotator cuff is usually painful and makes the arm difficult to raise. The ER records support he had full [range of motion] of the upper extremities one day follow the MVA. A carpal tunnel injury is usually associated with a front end impact. The patient saw the driver prior to impact which gave him time to release the wheel in anticipation of impact.

Exh A to MSJ, p. 2. The report further detailed Michel's treatment history with various physicians and facilities.

On October 9, 2008, American Family convened a claims-committee meeting to discuss Michel's claim. Present at the meeting were Tebbe, White, White's supervisor, John Horner, and Horner's supervisor, Tim Felt. A staff attorney was also present. As part of their consideration, the committee considered the type of accident impact (side-swipe impact at low speed with minor

---

[1]Tebbe outlined her findings in her report, stating:

Mr. Michel had been treated by his primary physician Dr. Willardo since at least 1989. Dr. Willardo's pre and post accident documentation were not consistently in a SOAP (subjective, objective, assessment, plan) format which raise[s] question[s] as to what treatments and diagnostic testing the patient had [been] receiving throughout the years. The medical notes routinely did not contain signatures of the author of the records, which is not an accepted medical practice. Clear documentation of objective findings, assessment findings, and the plan of care was not found. The medical records clearly support the patient had pre-existing subjective complaints of the right shoulder and arm that were not evaluated diagnostically and examination findings were not written.

It is not clear whether a partial or full thickness rotator cuff tear is present or causal to the MVA...The ER findings do not suggest the patient had symptoms of an acute rotator cuff tear (acute pain), or trouble raising the affected arm and ROM...Carpal tunnel syndrome is not a common traumatic diagnosis. The patient did not report initial upper extremity complaints and the examination findings in ER did not include any objective findings (inflammation) to support an acute condition or nerve entrapment.

Exh. A to MSJ at 1-2.

4

property damage); the injuries Michel attributed to the crash; his medical history; discrepancies between a treating physician's deposition testimony and his office notes at set out in Tebbe's report; the limited amount of the property damage to Michel's vehicle ($1,500); the fact that Michel had already been compensated $100,000 for his injuries; and the total amount of medical bills Michel attributed to the crash. After considering the information, White recommended to the committee that Michel had been fully compensated by payment of Hunter's policy limits and that no settlement offer should be extended. Despite her assessment, however, American Family extended an offer to settle Michel's UIM claim for an additional $1,500 over the $100,000 he had already received from Hunter.

At no time during this initial review did American Family request Michel to undergo an independent medical examination nor did it consult with Colussus®, a software program to evaluate bodily injury claims.

Michel did not respond to American Family's offer; rather, he filed the present lawsuit on October 30, 2008. In his Complaint, Michel alleges breach of the insurance contract, negligence, and bad faith. He seeks compensatory and punitive damages. American Family has moved for partial summary judgment asserting that there is no genuine issue of material fact that it acted properly in the processing of Michel's claim.

**Expert Witness Designation**

Michel designated Stacy Gleason ("Gleason"), a former claim representative for State Farm Insurance Company, as an expert to testify regarding the process undertaken by American Family in processing Michels' claim. Gleason's expert report outlines certain "mistakes" she believes American Family made in the course of adjusting Michel's claim. For instance, she asserts that

American Family overpaid the amount due on his medical payments thereby depleting his medical payments coverage and did not pursue reimbursement on Michel's behalf. This, in turn, further injured Michel because he had to pay additional out-of-pocket expense for medical treatments and physical thereapy. In addition, she opines that Tebbe was not qualified to review Michel's medical injuries as she had no specialized training or expertise in orthopedic injuries. She asserts that American Family should have required Michel to undergo an independent medical examination and researched the value of his claim through Colussus® and by conducting jury verdict research. Gleason ultimately concludes that "this claim handling was a comedy of errors from the beginning." (Expert report at p. 2).

Gleason's testimony is subject to a Motion to Exclude by American Family, the substance of which will be addressed, when applicable, herein.

## **Applicable Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly

supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)). Mindful of these principles the court turns now to the case at hand.

### DISCUSSION[2]

As set out above, Michel filed his complaint for breach of contract, negligence, and bad faith shortly after receiving American Family's settlement offer related to his UIM claim. Michel alleges American Family's refusal to pay for his alleged damages by paying the full policy limits constitutes a violation of the terms and conditions of the insurance policy. Additionally, Michel claims American Family was negligent and breached its duty of good faith and fair dealing in discharging its contractual obligations. Michel seeks punitive damages for American Family's alleged acts of bad faith. Each of these allegations is discussed, in turn, below

**Breach of Duty of Good Faith and Fair Dealing**

Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 518 (Ind.1993). In *Hickman,* the supreme court recognized a "cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith." *Id.* at 519. "The obligation of

---

[2]The court begins its discussion cognizant that under the doctrine espoused in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a federal court sitting in a diversity action is bound to apply the substantive law of the state which provides the rule of decision in addressing plaintiffs' claims. In this case, the court must predict how the matter before it would be resolved by the highest court in Indiana. *Mason v. Ashland Exploration, Inc.,* 965 F.2d 1421, 1424 (7th Cir. 1992); *Koval v. Simon-Telelect, Inc.,* 979 F.Supp. 1222, 1231 (N.D.Ind. 1997). "[I]ntermediate appellate court decisions are . . . a strong indication of what the state's high court would do." *Burleson v. Illinois Farmers Insurance Company,* 725 F.Supp. 1489, 1491 n.2 (S.D.Ind. 1989), citing *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat. Insurance,* 750 F.2d 619 (7th Cir.1984); *Heinhold v. Bishop Motor Exp., Inc.,* 660 F.Supp. 382 (N.D.Ind.1987). However, in making a determination of how a case would be decided by the Indiana Supreme Court, federal district courts are not bound by the decisions of the Indiana Court of Appeals. *Rayford v. Lumberman's Mutual Casualty Company,* 851 F.Supp. 1247, 1249 (N.D.Ind. 1994); *Robinson v. Ada S. McKinley Community Services, Inc.,* 19 F.3d 359, 363 (7th Cir. 1994).

good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.*

Here, Michel's bad faith contentions are three-fold. First, he asserts that he was denied an "objective, fair, and honest evaluation" of his injuries resulting from the accident and that this, in itself, is sufficient to demonstrate the bad faith of American Family. He argues that Tebbe was not qualified to assess his medical condition and he was entitled to an independent medical examination. He further asserts that if questions existed as to his injuries, there are "objective measurements" which exist to measure the extent of his injuries such as computer software programs and those were not employed in this case. Second, Michel contends that American Family overpaid his medical claims thereby prematurely exhausting his medical payments coverage. He believes this was done purposely to limit him from continuing his course of treatment without significant personal expense. Finally, he contends that American Family intentionally mishandled his claim to benefit its bottom line.

In response to these assertions, American Family points to case law endorsing the general proposition that an insurer is entitled to dispute, in good faith, the value of a claim and that, this case is nothing more than an example of that principle at work. As evidence of its good faith it argues that it: (1) approved the settlement authorizing the $100,000 payment to Michel from Hunter; (2) processed all of Michel's medical claims in a timely manner; and (3) promptly reviewed his UIM claim and made a reasoned decision to offer a settlement based upon the information it had before it. Thus, American Family asserts there is no basis in fact for Michel's

bad faith allegations.

Indiana courts have repeatedly emphasized that insurers are not liable for breach of their duty of fair dealing simply by disputing the value of a claim. Valuing a claim is not an exact science; insurers are free to make reasonable attempts to value a claim so long as there is a "rational, principled basis for doing." *Erie*, 622 N.E.2d at 520. Indeed, "a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Id*. "That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Id.*

Moreover, poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will. *Colley v. Indiana Farmers Mutual Insurance Group,* 691 N.E.2d 1259, 1261 (Ind.Ct.App.1998),. A bad faith determination inherently includes an element of culpability. *Id.*

In an attempt to demonstrate this element of culpability, Michel makes much of the fact that there are significant disputes in the record as to his injuries and the underlying cause of them.[3] He asserts that American Family turned a blind eye to documents and evidence that supported valuing his claim higher. He further illuminates that after the present suit was filed, American Family retained an expert that confirmed much of the medical testimony of Michel's treating physicians, therefore demonstrating that American Family purposely undervalued his claim. He asserts that

---

[3] There are also disputes about the manner and force of the accident. Michel contends the accident happened at a high rate of speed with traumatic impact; American Family discounts that assertion claiming a low-speed impact evidenced by little property damage, no blunt force trauma and no airbag deployment. These disputes alone, however, do not create an issue of fact as to the insurer's duty to act in good faith.

9

if American Family had conducted a more thorough evaluation or conducted an independent medical examination, it would have realized the full extent of his injuries.

There are multiple problems with Michel's assertions of bad faith. First, the fact that American Family retained a medical expert to review Michel's medical injuries **after** Michel filed suit alleging bad faith is irrelevant to his claim of bad faith. *Gooch v. State Farm Mutual Automobile Insurance Co.,* 712 N.E.2d 38 (Ind.Ct.App.1999) (conduct that occurs before the insured filed the bad faith claim is relevant to whether the insurer acted in bad faith, but conduct after the claim was filed is not relevant). Thus, the mere fact that American Family retained a medical expert to evaluate its case after litigation commenced does not have any bearing on the claim of bad faith.

Second, although Indiana courts have applied the holding in *Erie Insurance* in a bevy of ways, Michel has cited no cases where a reasonable dispute over the extent of medical injuries has led to a determination of bad faith. *See Gooch v. State Farm Mut. Ins. Co.,* 712 N.E.2d 38, 41 (Ind.Ct.App.1999) (evidence that insurer intentionally failed to investigate was sufficient triable issue); *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 42 (Ind.2002) (summary judgment in favor of insurer warranted where insurer had a good faith legal argument for disputing the claim); *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 730 (Ind.App.,2008) (no bad faith where insurer delayed payment until insured provided completed proof of loss forms). Indeed, this is not a case where the medical evidence is clear and indisputable, as Michel appears to assert. Michel admits that he had preexisting injuries similar to those that he claims are attributable to the accident. Thus, it is not unreasonable for American Family to assess his injuries mindful of those preexisting conditions. Next, Michel tries to hang his hat on the expert report from Gleason to demonstrate

that American Family's handling of the claim on the whole demonstrates that American Family had a culpable mental state. American Family moves to exclude this report asserting that her opinions are irrelevant and she draws conclusions for which she has no underlying support.

The court agrees with American Family that Gleason's report is problematic. A review of Gleason's report, even if considered at this stage, is entirely unhelpful to establishing a culpable motive on the part of American Family. Gleason, a former claims representative for State Farm, details throughout her report various claim handling errors all of which she opines were employed by American Family to benefit its bottom line. Her report does not attempt to correlate industry standards with how the claim was handled here, yet it is replete with criticisms of how the case was handled, who handled it, and the results attained.[4] Ironically, Gleason argues that White's 22 years of claims adjusting experience is insufficient to analyze Michel's claim when Gleason herself has only 7 years experience. She further concludes that there was "willful deception" on the part of American Family but does not ground that opinion in facts as to how American Family engaged in such deception. And, as set out below, claim mismanagement and poor judgment are not a sufficient basis to demonstrate a genuine issue of material fact on the elements of bad faith. *See Monroe Guar. Ins. Co. v. Magwerks Corp*., 829 N.E.2d 968, 976 (Ind.2005) (court declined to expand the duty to deal in good faith to include the manner of handling a claim). Indeed, what Gleason's report is short on is shedding light on the key material fact in this case and that is whether American Family had a reasonable basis for making the offer it did. *See Nelson v. Jimison,* 634 N.E.2d 509, 512-13 (Ind.Ct.App.1994) (genuine issue of material fact may exist

---

[4]Oddly, Gleason criticizes American Family for paying the full amount of medical coverage under Michel's policy.

when the insured presents expert opinion that there was "no reasonable basis" for the insurer to dispute coverage). However, because the court concludes that Gleason's report makes no difference in the underlying analysis, American Family's Motion to Exclude is DENIED as MOOT.

In this case, Michel is, in essence, asserting that American Family is wrong in its valuation of his claim. But, being wrong or failing to investigate a claim as diligently as an insured may desire is not the equivalent of "dishonest purpose, moral obliquity, furtive design, or ill will." *Wilson v. American Family Mut. Auto. Ins. Co.* 683 F.Supp.2d 886, 889 (S.D.Ind. 2010) (insurer's "decision not to request an independent medical exam or interview additional witnesses certainly does not amount to bad faith."). Here, American Family clearly did everything asked of it <u>except</u> pay the policy limits on Michel's UIM claim. American Family did not deny liability under Hunter's policy, but rather settled Michel's claim against Hunter for the full policy limits of Hunter's policy. American Family made timely medical payments to medical providers and, inadvertently, paid one provider twice in the process. It promptly approved Michel's settlement claim against Hunter for the policy limits of Hunter's policy.

As for the UIM claim, the ball had just begun rolling. Michel's counsel submitted medical documentation and a request for payment under the available coverage. In turn, American Family promptly reviewed the claim, submitted it to its internal medical reviewer for an opinion, convened a committee and analyzed all the circumstances it had before it to make a decision, ultimately, to offer $1,500 in settlement. That offer, even if wrong, misguided, or the result of poor judgment had a reasoned basis from the review conducted by American Family. Michel has provided no evidence to the contrary. Insurers are entitled to dispute the amount of a claim, *see*

*Erie,* 622 N.E.2d at 520, and that, is exactly what occurred here. Accordingly, the court concludes as a a matter of law that American Family did not breach its duty to deal in good faith. American Family's Motion for Partial Summary Judgment is GRANTED as to this claim.

**Punitive Damages**

In light of the above, summary judgment must also be granted as to Michel's claim for punitive damages. What remains in this case is Michel's assertion that American Family breached the insurance contract by failing to pay him appropriate UIM benefits as it contracted to do.[5] Under Indiana law, punitive damages are not available in an action for breach of contract; only "where the conduct of the breaching party independently establishes the elements of a common law tort" may punitive damages be awarded-"for the tort." *Miller Brewing v. Best Beers,* 608 N.E.2d 975, 981 (Ind.1993); See *Allstate Ins. Co. v. Hennings* 827 N.E.2d 1244, 1250 (Ind.App.,2005). While Indiana recognizes the duty of an insurer to deal in good faith as an independent tort, this court has granted summary judgment as to that claim. Accordingly, as a matter of law, American Family is entitled to summary judgment on Michel's punitive damages claim.

## CONCLUSION

Based on the foregoing, American Family's Motion for Partial Summary Judgment is hereby GRANTED [DE 28] as to the claim of insurer bad faith and the request for punitive damages. The Motion to Exclude [DE 32]is DENIED as MOOT.

Entered: This 2nd day of August, 2010

---

[5] It is unclear how Michel alleges that American Family breached the insurance contract. To date, American Family has not denied Michel's UIM claim, it has accepted coverage. The sole dispute at this point appears to be claim valuation.

s/ William C. Lee
United States District Court